UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| D-Q UNIVERSITY. BOARD OF TRUSTEES, et al., <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL A. WILLIAMS, et al., <br><br> Defendants. | No. 2:21–cv–553–MCE–KJN PS <br><br> ORDER STAYING CASE |

In this case, plaintiffs D-Q University Board of Trustees and D-Q U. California ("DQ") seek a declaration concerning the status of a parcel of land located in Yolo County, California. (See ECF No. 1.) DQ also contends defendants are trespassing, and requests ejection. (See Id.) Presently pending before the court are six motions to dismiss, each set for a November 16, 2021 hearing, from pro se defendants Cardoza, Manriquez, Fernandez, Williams, Webb, and Chavez. (ECF Nos. 16, 17, 18, 24, 25, 26.) DQ opposes dismissal in part. (ECF No. 27.)

The parties state in their filings that DQ filed similar claims in California Superior Court in 2019, which were on appeal at the California Court of Appeal after the Superior Court granted defendants' demurrer. (See ECF No. 27.) On November 1, DQ informed the court that its state-court action had been reinstated, and so the undersigned ordered DQ to show cause why this federal action should not be stayed or otherwise dismissed. (ECF No. 29, 30, 31.)

For the reasons that follow, this action is hereby STAYED.

1

**Legal Standards**

Colorado River deference to state court proceedings rests on "considerations of [w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Colorado River Conservation Dist. v. United States, 424 U.S. 800, 817 (1976) (citations omitted). Because of the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," "[g]enerally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction[.]" Id. (citations omitted). The "circumstances permitting" deference, "though exceptional, do nevertheless exist." Id. at 818.

A federal court should consider a number of factors in assessing whether to defer to a state court, including: (1) whether the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) whether "federal law provides the rule of decision on the merits"; (6) whether the state court proceedings are inadequate to protect the federal litigant's rights; and (7) whether the parties are engaging in forum shopping. Colorado River, 424 U.S. at 818–19 (citations omitted); Moses H. Cone Memorial Hospital v. Mercury Const. Corp., 460 U.S. 1, 23 (1983); American Int'l Underwriters, Inc. v. Continental Ins. Co., 843 F.2d 1253, 1259 (9th Cir. 1988). No one factor is determinative, and other factors may be considered. Cone, 460 U.S. at 16 ("The weight to be given to any one factor may vary greatly from case to case[.]"); see also, e.g., Nakash v. Marciano, 882 F.2d 1411, 1416 (9th Cir. 1989) (approving the district court's consideration of whether the parallel proceedings are "substantially similar") (citing, e.g., Interstate Material Corp. v. City of Chicago, 847 F.2d 1285, 1288 (7th Cir. 1988); Telesco v. Telesco Fuel & Masons' Materials, Inc., 765 F.2d 356, 362 (2d Cir. 1985)).

Ultimately, the decision whether to defer to a state court "because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." Cone, 460 U.S. at 16.

**Analysis**

A review of the substantive arguments, procedural postures, and other issues in this case counsels that on balance, this court should defer to the Superior Court for resolution of the issues raised by the parties. The appropriate remedy is to stay these proceedings.

As indicated by the parties' filings, the core of the dispute between DQ and defendants concerns the rights of the parties to (i) use the name associated with a California corporate entity, and (ii) possess a parcel of land in Yolo County. (See ECF No. 1-1 at 2-8 (DQ's first amended complaint for declaratory judgment and trespass, filed in 2019 in California Superior Court).) Defendants argued to the Superior Court that the parcel was "Indian lands" held in trust by the United States—a contention DQ disputed. (See ECF No. 1-3 at Ex. 7-9 (parties' briefs and hearing transcript related to defendants' demurrers for lack of subject matter jurisdiction).) In March of 2021, the Superior Court disclaimed subject matter jurisdiction over the dispute, citing 28 U.S.C. Section 1360 (granting general jurisdiction to California over civil causes of actions in cases where "Indians" are parties—except where the "alienation . . . of any real or personal property" belongs to any 'Indian' or any 'Indian' tribe, band, or community "held in trust by the United States") and Boisclair v Superior Court, 51 Cal.3d 1140 (1990) (indicating that where it was "possible . . . that the disputed property is in fact 'Indian' trust land . . ., then a state court is barred from assuming jurisdiction in the case."). (See ECF No. 1-4 at 56 (transcript of oral argument in DQ's motion to reconsider, wherein Superior Court dismissed the state-court action under 28 U.S.C. Section 1360(b) and Boisclair.) Thereafter, DQ appealed to the California Court of Appeal. (See ECF No. 27 at 5-6 (DQ's opposition to defendants' motions to dismiss, indicating DQ "filed an appeal of the Superior Court dismissal with the Yolo Appellate Division").

At the same time, DQ filed this federal action seeking declaratory relief as to the status of the land (as well as ejectment). (ECF No. 1.) Six of the defendants moved to dismiss, asserting among other things that federal courts do not issue advisory opinions, and that subject matter jurisdiction is otherwise lacking due to an absence of a federal question or complete diversity. (ECF Nos. 16-18, 24-26 (citing 28 U.S.C. §§ 1331, 1332.) DQ opposed dismissal in part,

1  indicating while they agree the trespass claim does not belong in federal court, dismissal without
2  a declaration as to the status of the land would essentially leave DQ in jurisdictional limbo—
3  unable to press a trespass action in either state or federal court.  (ECF No. 27.)

4      Given the pending appeal in state court, the undersigned ordered DQ to keep the court
5  informed of the status of those proceedings.  (See ECF No. 23.)  On November 1, DQ filed a
6  declaration indicating the California Court of Appeal reversed the Superior Court's demurrer,
7  thereby reinstating DQ's claims in state court.  (ECF No. 29 (noting defendants had no evidence
8  the disputed parcel was held in trust by the United States, finding DQ's evidence indicated
9  otherwise, and remanding for further proceedings because the property "has no possibility of
10  being 'Indian trust land,' as required by 28 U.S.C.A section 1360(b) and Boisclair in order to
11  divest the trial court of subject matter jurisdiction.").)

12      The undersigned then ordered DQ to show cause why this federal action should not be
13  dismissed or otherwise stayed under Colorado River.  (ECF No. 30.)  DQ responded that they
14  were not opposed to dismissal if it accompanied a declaration concerning the status of the land,
15  and that they otherwise did not oppose a stay in the case.  (ECF No. 31.)

16      Reviewing the relevant factors under Colorado River and its progeny, the court finds the
17  vast majority weigh in favor of deference to the state court.  Cone, 460 U.S. at 16.  The core of
18  the dispute concerns the parties' rights to a parcel of land in California, and under 28 U.S.C.
19  Section 1360(a), Congress has explicitly given jurisdiction over civil cases of this nature to
20  California.  Given that the Court of Appeal has determined the parcel has "no possibility of being
21  'Indian trust land'" and therefore further proceedings in Superior Court are warranted (ECF No.
22  29), this federal court should defer to "the court first assuming jurisdiction" (factor 1)—especially
23  where the Court of Appeal has resolved the status of the parcel in favor of DQ (factor 4).  Cone,
24  460 U.S. at 21 ("[P]riority should not be measured exclusively by which complaint was filed first,
25  but rather in terms of how much progress has been made in the two actions.").  Further, the
26  undersigned notes the "desirability of avoiding piecemeal litigation" (factor 3), and that state law
27  will ultimately provide the rule of decision on the trespass and business associations claims
28  (factor 5).  See American Int'l Underwriters, 843 F.2d at 1258 ("Piecemeal litigation occurs when

different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results."). The undersigned also notes that while both state and federal courts appear generally convenient for the parties in terms of location, defendants in this case are currently disputing DQ's service of process, whereas the parties have already appeared in state court—tipping the second factor slightly in favor of deference. The undersigned sees no reason the state court system cannot protect the parties' rights at this time, and sees no attempt to forum shop (factors 6 and 7). In fact, it appears aside from a declaration concerning the status of the land, neither party believes this case should be in federal court. (See ECF Nos. 16-18, 24-27.) Finally, the court notes that the state court complaint and federal court complaint raises "substantially similar" issues (the Nakash factor, 882 F.2d at 1416), as the merits of both actions concern the rights of the parties to possess the parcel at issue. Thus, after careful balancing, Cone, 460 U.S. at 16, the undersigned finds "exceptional circumstances" counsel deference to the California Superior Court in this action. Colorado River, 424 U.S. at 817.

In terms of disposition, the court notes DQ's non-opposition to dismissal—the same remedy defendants seek in their motions to dismiss. (ECF Nos. 16-18, 24-27.) However, the parties dispute what effect the dismissal should take. Defendants believe, among other things, that the court should dismiss for lack of subject matter jurisdiction (which is without prejudice) because they argue federal courts are generally averse from issuing advisory opinions and no federal question or diversity jurisdiction exists. DQ assents to dismissal, but only so long as this is accompanied by a declaration of the status of the land—essentially resolving one of their two claims on the merits. The problem with both arguments is that it effectively resolves the issue of the status of the land, and a disposition under Colorado River is not meant to dispose of the merits of any particular issue. It is instead a disposition based on "[w]ise judicial administration" of an action with the "conservation of judicial resources and comprehensive disposition of litigation" in mind. Colorado River, 424 U.S. at 817. Simply, the court's aim is to take no position on the status of the land or on the merits of DQ's claims and defendants' defenses.[1]

---

[1] Further, the court also recognizes that the Superior Court theoretically could again disclaim jurisdiction under Boisclair. If that were to occur, the undersigned assumes DQ would return to

Thus, the undersigned finds the appropriate remedy is to stay this case under <u>Colorado River</u>. Defendants' motions to dismiss are administratively denied without prejudice—meaning that defendants would be allowed to reassert their arguments about subject matter jurisdiction, service of process, and the like, should this court resume hearing plaintiff's claims.

Finally, given that defendants are proceeding without counsel in this action, the court places on DQ the burden of providing status updates. Within six months of this order, DQ shall file a statement with the court informing it of the status of the state court proceedings. If at that time the state court action is still pending, DQ shall indicate as much and the undersigned will likely continue to stay this federal case. If at any point the merits of DQ's claims are conclusively resolved, DQ shall inform this court as much. DQ shall serve any status updates made on defendants.

**ORDER**

Accordingly, IT IS HEREBY ORDERED:

1. This action is STAYED until further notice;
2. The November 16, 2021 hearing on defendants' motions to dismiss (ECF Nos. 16, 17, 18, 24, 25, 26) is VACATED, and the motions are ADMINISTRATIVELY DENIED WITHOUT PREJUDICE; and
3. By May 9, 2022, plaintiffs shall file a statement in this case updating the court on the status of the state court proceedings.

Dated: November 9, 2021

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

DQ.553

---

this court seeking a declaration, and defendants would challenge the court's ability to do so. Given that the parties have at least specially appeared in this federal action (even if to dispute proper service of process), full dismissal would be unwise. A case number has been assigned, the court has now familiarized itself with the issues, and any resumption of these issues in this court should be done with judicial economy in mind.